(No. 18114.—Judgment reversed.)
CHARLES F. MORGAN, Defendant in Error, *vs.* THE NEW YORK CENTRAL RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed October 22, 1927—Rehearing denied Dec. 7, 1927.*

1. NEGLIGENCE—*duty of a railroad company to a trespasser or licensee on right of way.* The servants of a railroad company owe a trespasser on the right of way the duty to not willfully and wantonly injure him after they have notice of his presence in a place of danger, but, even though there is a permissive use of the right of way for longitudinal travel, if an engineer observes one walking on the right of way with his back to the approaching train and has signaled the approach of the train he has a right to presume the pedestrian will heed the signal and avoid danger where he is able to do so, and the exercise of reasonable care does not require that the train be stopped until it is apparent that the pedestrian has not heard or will not heed the signal.

2. SAME—*when verdict should be directed for defendant on the question of willful or wanton conduct.* While the question of willful or wanton conduct is usually a question of fact for the jury, yet where all the evidence, viewed in its most favorable light for the plaintiff, does not tend to show a willful and wanton act done without regard to the safety of others, and where proof of such act is essential to the right of recovery, the jury should be directed to find a verdict for the defendant.

FARMER, J., dissenting.

WRIT OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HARRY B. MILLER, Judge, presiding.

GLENNON, CARY, WALKER & MURRAY, (SIDNEY C. MURRAY, and MARVIN A. JERSILD, of counsel,) for plaintiff in error.

E. LESLIE COLE, and CHARLES C. SPENCER, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Appellate Court for the First District affirmed a judgment for $5000 recovered by Charles F. Morgan against the New York Central Railroad Company in the superior court of Cook county for personal injuries received on January 30, 1923, as the result of a collision with an engine of the defendant in the city of South Bend, Indiana. The record has been brought to this court by a writ of *certiorari*.

The cause was submitted to a jury on a declaration which contained two counts charging the defendant with willful and wanton injury, the facts constituting such willful and wanton injury being that the defendant's servants operated a train of the defendant, in violation of an ordinance of the city of South Bend, at a greater rate of speed than eight miles an hour and without ringing the engine bell; that they saw the plaintiff in a dangerous position with reference to the train in ample time to have warned him or to have stopped the train before reaching him, but willfully and wantonly and in utter disregard of life ran the train against him and injured him.

The evidence showed that the track of the defendant in South Bend runs from southwest to northeast across Ford, Harris, Walnut, Webster and Arnold streets. Ford street

runs east and west and the others north and south. At
the Arnold street crossing the property of the Oliver Chilled
Plow Works lies on the south side of the railroad track
and on the east side of the street. North of the track of
the defendant, and parallel to it, are six or seven tracks of
the Grand Trunk railway, the closest being about twenty-
five feet distant. Morgan had been a railroad man all his
life, and from 1917 to 1920 had been yardmaster of the
Grand Trunk in its yards at South Bend and was familiar
with the tracks and knew the movement of the trains. At
the time of the accident he had been employed by the Oli-
ver Chilled Plow Works for six months. On November 3,
1922, he had suffered a paralytic stroke. He was confined
to his home until December 3, when he returned to work
as a car clerk and weigh clerk. On the morning of Janu-
ary 30, Smith, the yardmaster for the plow works, had tele-
phoned to Kidder, the yard master of the plaintiff in error,
to have some empty cars set at the plow works. At noon
Smith instructed Morgan to keep after the New York Cen-
tral, and after the twelve o'clock whistle blew Morgan had
his lunch and walked to the New York Central office to
see Kidder personally. Kidder was not there. Morgan
paid his dues as a member of the Railway Relief Associa-
tion to Wiegner, the local secretary, who was employed by
the plaintiff in error as a telegraph operator at the yard
office. Morgan knew that the plaintiff in error operated a
train east which was due at the Oliver street station at
12:26 P. M. While at the yard office he heard engines
moving, and when he started back at 12:38 P. M. he sup-
posed the train had gone. He looked and there was no
train in sight. He then walked east along a path on the
right of way of the plaintiff in error south of its track.
Following this path he crossed diagonally Ford street and
Harris street. Half way between Harris and Walnut
streets an alley extended east from the railroad right of
way to Walnut street. The path continued along the south

side of the track to Walnut street, which it crossed, and to and across Arnold street to the plow works. The alley was about 125 feet from Walnut street and a board fence extended along the south side of the right of way. For the length of this fence the path was between it and the railroad track, the space between the south rail and the fence being four feet and nine inches, and at its nearest point it was only 30⅜ inches between the overhang of the engine and the fence. The path was slightly depressed, the ground sloping upward toward the fence and the track. After Morgan had proceeded a few steps in the passage between the fence and the track an engine came behind him, and either he was struck by the end of the pilot beam or he slipped and fell against the cylinder and received the injuries for which he sues.

For many years employees of the Oliver Chilled Plow Works and other pedestrians have made use of the New York Central's private right of way for travel from Ford street to Arnold street, along the path which Morgan was using when he was injured. The train that injured him was a regular passenger train from Streator, Illinois, to South Bend. At South Bend the railroad company had two stations, one known as Oliver station, southwest of the Ford street crossing, about 300 yards from the place of the accident to Morgan, at which the train was due at 12:26 P. M. The other station is the South Bend passenger station, which is the end of the run and is about a mile east of Oliver. The running time between the two stations is five minutes, and the train is due at the South Bend station at 12:31.

The plaintiff in error contends that the court erred in denying its motion to instruct the jury to find a verdict in its favor because there was no evidence of willful and wanton conduct by its servants. There was positive testimony that the automatic bell on the locomotive was ringing and that the whistle was blown for Ford street and for Harris

street, and there was no evidence to the contrary though some of the witnesses heard neither whistle nor bell. Morgan, as he testified, heard the whistle sounded at the time he was struck and heard engines moving and the exhaust of engines but thought these sounds were on the Grand Trunk and not the New York Central. Dembinski testified that he did not remember whether he heard any whistle blow for the stop at the Oliver station and did not hear any whistle before the accident that he remembered. Kaczorowski, who saw the accident from the Walnut street crossing beyond the east end of the fence, testified that when he first saw the train it was at Ford street, and he heard the whistle blow and the bell ringing and saw the engineer sticking his head out, and that was the only time he heard the whistle blow. This testimony is not contradictory of the testimony of the half dozen or more witnesses who testify to the blowing of the whistle at Harris street. Morgan and Dembinski heard the whistle when Morgan was struck but Kaczorowski did not. Kaczorowski heard the whistle at Ford street, but Dembinski did not remember whether he heard it or not and did not remember hearing any whistle before the accident. This testimony was all merely negative in its character and did not tend to raise an issue of fact as to whether the whistle was blown or not, with the positive testimony that the whistle was sounded. There was a railroad crossing about fifty yards west of Ford street, and the engineer testified that the whistle was blown for that crossing, was again blown at Ford street for Harris street, and at Harris street was blown as a warning to Morgan, whom the engineer saw walking on the path on the right side of the track about 200 feet away and who was then about ten feet from the west end of the fence, and that the bell was ringing all the time. The train, the engineer further testified, was running between ten and twelve miles an hour, the ground was icy, the train overtook Morgan five or six feet east of

the west end of the fence, and the front part of the engine, including the pilot beam, passed Morgan without striking him but he slipped and fell against the engine cylinder and steam chest and was thrown to the ground. Morgan denied that he slipped and fell against the engine and thought he was hit by the pilot beam. The train was stopped in about 120 feet. On the motion to direct a verdict the court could not weigh the evidence, which must be taken in its most favorable aspect to the party against whom the motion is directed, and we must consider that Morgan did not hear the warning whistle and bell and did not slip but was struck by the end of the pilot beam.

Morgan was a trespasser upon the property of the plaintiff in error, and its servants owed him the duty, after they had notice of his presence in a place of danger, not willfully and wantonly to injure him. The charge in the declaration is that they saw Morgan and knew of his peril in ample time to have warned him or slowed up or stopped the train before reaching him, but they willfully and wantonly, after having such knowledge, ran the train against him. This is the allegation which the plaintiff was bound to prove to entitle him to a verdict. Even if there was a permissive use of the railroad company's right of way for longitudinal pedestrian travel and if the company was bound to anticipate the presence of persons passing along the path in question, it was not required to abandon the use of its right of way for the passage of trains and was certainly under no greater duty than the use of reasonable care to discover them and to avoid injuring them when they were discovered to be in danger. Morgan was himself guilty of an inexcusable lack of care in heedlessly pursuing his walk along the path in such close proximity to the track as to be within the overhang of the engine while the train was approaching from behind him. He testified that from the time he started from the yard office of the New York Central southwest of Ford street to the time he was hit he did

not look around to see whether a train was coming in the direction in which he was going on the track adjacent to the path on which he was walking. There were seven tracks of the Grand Trunk railroad there adjacent and parallel to the New York Central. The tracks were all together, just like one road. Morgan said that he heard the exhaust of a locomotive and the noise of a locomotive on the Grand Trunk and heard yard engines switching back and forth on the Grand Trunk but did not hear the New York Central; that he did not know where the New York Central engine was or he would not have got hit. He did not hear the exhaust of the New York Central engine, and the reason was that he was not looking for any trains of that road. He thought the New York Central train had gone. Had he kept a lookout for his own safety he would have discovered the train and avoided injury. Because of such lack of care the plaintiff was not entitled to a verdict unless the evidence showed the railroad company to be guilty of having willfully and wantonly caused the injury,—that is, of having acted, through its servants, with such a degree of negligence that from their knowledge of the conditions and surrounding circumstances they must have been conscious that their conduct would naturally and probably result in injury to the plaintiff and yet acted in disregard of his safety. It is admitted that the engineer saw Morgan when he was 200 feet away, and it is undisputed that he was then in no danger, for he had not reached the fence and was approaching a public alley, into which he might have been expected to turn. Even if he should enter the narrow path between the fence and the track there was room for the train to pass without injuring him, and persons had frequently traveled that path and been passed by trains without injury. The engineer had a right, when he first saw Morgan, to act on the presumption that Morgan would do what a reasonably prudent man would do and refrain from going upon the track or putting himself

in a place of danger. The engineer was not required to stop the train until it became apparent that Morgan had not heard or would not heed the signal. While the question of willful or wanton conduct is usually a question of fact for the jury, yet where all the evidence, viewed in its most favorable light for the plaintiff, does not tend to show a willful and wanton act done without regard to the safety of others, the jury should be directed to find a verdict for the defendant. Such is the case here.

In view of this conclusion it is unnecessary to consider any other assignment of error.

The judgments of the Appellate Court and of the superior court are reversed.     *Judgment reversed.*

Mr. JUSTICE FARMER, dissenting.