The plaintiff, J.W. Robertson, brought his action in the circuit court of Saline county against the defendant, the New York Central Railroad Company, to recover damages for personal injuries and for damage to his truck arising out of a collision in the village of Stonefort between his truck, which he was driving at the time, and a freight train of the defendant company. His complaint charged negligence generally and, in addition, there were two counts charging the defendant, through its servants, with willfully and wantonly driving and propelling its train toward and over a street crossing at an excessive rate of speed, without ringing a bell or blowing a whistle, and without keeping a lookout for persons using the street and about to cross the track at the street intersection. Defendant filed its general denial and also averred that plaintiff *Page 582 
was guilty of contributory negligence. The trial resulted in a general verdict of the jury assessing plaintiff's damages at $1500. Judgment was entered on the verdict, and defendant appealed to the Appellate Court for the Fourth District. The Appellate Court decided that the plaintiff was guilty of contributory negligence and, hence, could not recover under the first and second counts of his complaint which charged negligence generally, and that a verdict should have been directed in defendant's favor on these counts. As to counts three and four, however, the court sustained the judgment on the theory that even though the plaintiff was guilty of negligence which contributed to the accident, nevertheless, there was some evidence upon which the jury might have been justified in returning its verdict on the ground of willful and wanton negligence on the part of those in charge of the operation of the train. (Robertson v. New YorkCentral Railroad Co. 321 Ill. App. 313.) There was no special verdict, nor interrogatory submitted to the jury, upon this question. We have allowed defendant's petition for leave to appeal, and the record is before us for a further review.
Seeking a reversal, defendant contends that, construing the evidence most favorably to plaintiff, the proof does not support the charge of willful and wanton conduct. Plaintiff's contributory negligence has been finally decided by the Appellate Court. The sole question remaining is whether there is any evidence in the record to sustain the third and fourth counts. A consideration of the problem, as we thus find it, necessitates a review of the essential facts. The railroad runs in a northeasterly and southwesterly direction through the small and sparsely settled village of Stonefort. In the village proper, it crosses Chestnut street, a thoroughfare of gravel and dirt construction, about twenty feet in width. While plaintiff was driving his Chevrolet truck along this street and over the tracks of the defendant on February 2, 1942, between *Page 583 
eleven and eleven forty-five o'clock in the morning, the accident occurred. Plaintiff, thirty-four years of age, had, for about two years, operated a general store adjacent to Chestnut street. It was located east of the tracks and, also, east of State route No. 45 which ran in a northeasterly and southwesterly direction parallel to the railroad. Chestnut street intersects both route 45 and the tracks of the defendant. On the day of the accident, plaintiff had loaded his truck with flour and was driving along Chestnut street. Approaching route 45, he stopped to permit an automobile to pass and then proceeded westwardly to the railroad intersection. There was no rain, ice or snow. The day was cool and cloudy and, apparently, the visibility was good. Plaintiff, on cross-examination, stated "the sun was not shining bright although it might have been," and that his eyesight and hearing were good. Chestnut street between route 45 and the railroad tracks was in poor condition, and plaintiff was driving in second gear at about from seven to ten miles an hour. His brakes were in good condition and he could stop his truck at the rate of speed at which he was traveling in about twenty feet. Dave Evans, a mechanic, after qualifying, stated that, in his opinion, a truck such as the one plaintiff was driving could have been stopped within eight feet under the same circumstances and at the same rate of speed. Signs warned approaching traffic of the presence of a railroad crossing, and plaintiff had driven over it daily. He testified that he looked but saw no train, neither did he hear any bell or whistle. The engineer of the approaching train testified that his bell was ringing and that he blew his whistle for the crossing as he passed the whistling post and about four times before reaching Chestnut street; that the train consisted of the engine, sixteen cars, and a coach; that when he first saw the truck he again whistled and thought it would stop, and that when he saw plaintiff was going to drive onto the crossing he applied his emergency brakes. *Page 584 
At the time of the accident, the train was proceeding in a northeasterly direction and, according to the engineer, at about thirty to thirty-five miles an hour. Another witness placed the speed at forty to forty-five miles per hour, moderately fast. One witness said, "Very fast." Others placed it at the usual speed through the village. From measurements taken and uncontradicted, it appears that a person standing fifty feet east of the tracks could see a man on the tracks to the south a distance of two hundred and eight feet; from forty feet, a distance of three hundred and nine feet; from thirty feet, six hundred and eight feet; from twenty-five feet, one could see as far as the whistling post, approximately one-half mile away, and from twenty feet, the whole line of track was visible.
All of the witnesses for plaintiff testified that the whistle blew, except Maria Kelly who also said she did not hear a bell ringing. Some said they heard it only once but all placed it before the train reached the crossing and some from one-half to three-quarters of a mile south of the Chestnut-street crossing. Several of defendant's witnesses testified to practically the same facts.
Even admitting that there was evidence that no whistle was blown, this would not, of itself, constitute evidence of willful and wanton misconduct under the facts of this case. Neither can it be said that a train traveling at a rate of speed not in excess of forty miles an hour through a sparsely inhabited village is in itself proof of such a high rate of speed as to constitute willful and wanton negligence. The engineer had a right, when he first saw the plaintiff, to act upon the presumption that Robertson would do what a reasonably prudent man would do and refrain from going upon the track or putting himself in a place of danger. He, the engineer, was not required to stop the train until it became apparent that plaintiff had not heard or would not heed the signal. (Morgan v. New York CentralRailroad Co. 327 Ill. 339.) There is no *Page 585 
evidence that the highway in question was a much used and traveled one, nor were there any unusual circumstances, such as smoke or other trains passing, to confuse those attempting to cross. (Gills v. New York, Chicago and St. Louis Railroad Co.342 Ill. 455; Chicago and Northwestern Railway Co. v. Hansen,166 Ill. 623.) The right of way is necessarily one peculiarly inherent in the railroad in order to facilitate rapid operation of both freight and passenger trains, and the public should be held to a recognition of this right. When a railroad train and a person traveling on a highway each approaches a railroad crossing at the same time, it is not the duty of the company to stop its train, but it is, instead, the duty of the traveler, in obedience to the known custom of the country, to stop and not pass in front of the advancing train. (Carrell v. New York Central Railroad Co.384 Ill. 599; Provenzano v. Illinois Central Railroad Co.357 Ill. 192.) In the last case cited, this court observed: "In order to constitute willful and wanton misconduct the injury must either have been intentionally inflicted, or produced by acts so grossly negligent as to exhibit a reckless disregard for the safety of others. [Citation.] The only evidence for the plaintiff tending to show negligence on the part of the defendant was to the effect that some of the witnesses did not hear a bell or whistle, and evidence tending to show that the speed of the train was something between forty-five and sixty miles per hour. The testimony of the witnesses to the effect that they heard no bell or whistle was merely negative in its character and did not tend to raise an issue of fact as to whether or not the whistle was blown or the bell rung. [Citation.] However, even if it be taken as true that no bell was rung or whistle sounded, it would be nothing more than an act of negligence. The same is true as to the speed at which the train was running, even if it be assumed at the highest estimate of sixty miles per hour. The public interest requires, and *Page 586 
the law permits, that passenger trains may be operated at such speed as may be consistent with a due regard for the safety of the passengers and those persons who are, in the exercise of due care for their own safety, traveling on the highways over and across the railroad tracks. [Citations.]" The quoted observations apply with like force to the factual situation here.
From an examination of the evidence in the case at bar we are forced to the conclusion that there is no evidence in the record justifying the submission of the cause to the jury on the third and fourth counts of the complaint charging the defendant with willful and wanton negligence by reason of the operation of the train by its servants and employees. Although the question of willful or wanton conduct is usually a question of fact for the jury, where the evidence, viewed in its most favorable light for the plaintiff, does not tend to show a willful and wanton act done without regard to the safety of others, a verdict should be directed in favor of the defendant. (Bartolucci v. Faletti,382 Ill. 168; Morgan v. New York Central Railroad Co. 327 Ill. 339.) For the reasons stated, the judgments of the circuit court and the Appellate Court are each reversed.
Judgments reversed.