John Higgins, Administrator, Plaintiff-Appellee, v. Baltimore & Ohio Railroad Company, et al., Defendant-Appellant.

Term No. 57–O–8.

Fourth District.

February 7, 1958.

Released for publication February 28, 1958.

Kramer, Campbell, Costello & Wiechert, of East St. Louis (Edwin H. Burgess, and Kenneth H. Ekin, of counsel) for defendant-appellant.

William P. Fleming, and Goldenhersh & Goldenhersh, of East St. Louis, for plaintiff-appellee.

JUDGE SCHEINEMAN delivered the opinion of the court.

Vernon Gale Higgins was killed when struck by a passenger train operated by the defendant, B. & O. Railroad Company. Plaintiff has obtained a verdict and judgment as administrator, against that defendant. The C. B. & Q. Railroad Company was also a defendant, but was found not guilty and is not involved on this appeal. It is here contended that a directed verdict should have been entered for the defendant, B. & O. Railroad Company, or, in the alternative, a new trial should have been granted.

The essential facts are not in dispute. At the Village of Caseyville, the B. & O. main line forms a long curve, with most of the village to the south, on the concave side. Two streets cross the tracks, protected by automatic flashers. There are no other streets laid out across the tracks to the west of the flashers, but there are some dead end streets which terminate at the railroad right of way. Also, south of the main line there

is a long siding, known as the passing track, which runs parallel to the main line.

In the early afternoon of the day of the accident, a C. B. & Q. freight train of some 55 cars was using the B. & O. track to go eastward from St. Louis, and shortly after 2:00 P. M. it went upon the passing track at Caseyville. The fast B. & O. passenger train, known as the Diplomat, was due to pass this point at about 2:30 P. M., enroute to St. Louis. As the freight from the west pulled on the passing track, the engine first came to a stop far enough west of the flashers so they would not be operating during the 15 or 20 minute wait. Later, when the passenger train was heard to whistle as it approached, the freight was moved slowly forward, closer to the switch where it would go back on the main line, and again stopped. No witness could recall whether it was in motion at the instant of the accident.

The flagman on the rear of the freight testified that he got off on the left side of the train, where he could see along the main line. The rear end of the train was on fairly straight track, so that he could see to about the middle of his train, but the rest of the train curved around to the right out of his view. From the number of cars, he estimated the length of the train at 2200 feet. Across on the other side of the main line was an open field, with no buildings or other obstructions along the tracks.

He testified he saw two boys walking west, toward him, between the rails of the main line. Thus the freight was to their left between them and the village, and the open field to their right. As the passenger train approached the village, the flagman heard it give the standard crossing signal of two long blasts followed by a short and long. The boys did not get off the track, and he estimated that, at this time, they were about 800 feet from his caboose. As the approaching

train came round the curve, it gave some short blasts, and the boys jumped off the track; one went north into the field and the other to the south, where he appeared to go between two box cars. But then he turned around and sought to run back toward his friend, jumping in front of the moving train, and was struck by the right front of the engine. The witnesses estimated the speed of the train at 40 to 50 m.p.h.

The B. & O. engineer testified to his giving the whistle signals for the crossings, the same as the first witness. He stated that he was watching the track as he came round the curve, and as soon as he saw pedestrians on the track, he gave short blasts of the whistle, and saw them jump out of the way; that he saw the one run between two freight cars, then turn and try to run back across the track. He states that as soon as he saw this movement, he applied his brakes at full emergency. The boy was only about 50 feet ahead as he jumped back. The train came to a stop some 1000 or 1100 feet to the west of the point of impact.

This witness estimated his speed at 50 m.p.h. and the distance of the boys when first visible at 300 feet. A civil engineer who was a witness called by plaintiff testified from plats that the actual distance would be about 500 feet. In either case, it is obvious that it was necessary to get the boys off the track, there was not time to stop the train.

The fireman on the passenger train testified substantially the same as the other two witnesses. These three men were the only eye witnesses to testify; they were called by plaintiff during his case in chief, and again on defense, and were not contradicted on any material fact.

 It is the general rule of law that a railroad has no duty to keep a lookout for trespassers, but when persons are seen on or near the tracks in a place of danger, there is a duty to give them a signal. Morgan

230

v. New York Cent. R. Co., 327 Ill. 339; Bartlett v. Wabash R. Co., 220 Ill. 163; Illinois Cent. R. Co. v. Eicher, 202 Ill. 556; Ingram v. Jackson, 206 Ill. App. 466; Sperry v. Wabash R. Co., 55 F. Supp. 825. The last case involving two ten year old girls, contains careful analysis of the Illinois law on the subject.

■■■ No attempt is here made to cite the vast number of cases which recognize the nation's need for rapid transit, and safety of passengers, and that these needs preclude any rule of law that a train must make an emergency stop every time a pedestrian is seen on or near the tracks.

As hereafter noted, there are cases which make some modification of the general rules under special circumstances. Thus a special situation arises at public crossings or other crossings where the railroad knows, or should know, that a considerable number of persons are in the habit of crossing. The plaintiff seeks to support the result in this case on that special situation, as follows: There was testimony that a creek ran through the field north of the tracks, and persons from the village would go over there to hunt, etc. All the witnesses conceded that there were no maintained crossings in this area, and that there was no visible path across the maintained right of way. However, there was some testimony that in the weeds and growth along the sides there were a number of worn paths.

In our opinion this evidence does not bring the case into the special class of exceptional conditions, and that it was irrelevant under the actual facts so that it should have been stricken on motion. The latter statement is based on the plain fact that no one was crossing the tracks, and there was no evidence that the boys used the paths that day or any other time. At the particular time, the freight train stood between the village and the main tracks, blocking any means of crossing for a distance of nearly half a mile.

■ However, even if the freight train had not been there, and the boys had sought to cross the tracks some distance from the protected approaches, the law was misapplied in the trial, and in plaintiff's brief on this appeal. The law does not require that trains proceed slowly at every crossroad, even if plainly visible, and certainly there can be no such requirement in rural or sparsely built areas, simply because people have crossed into open fields.

■ A special situation arises at maintained crossings in built up areas, and places where there has been long continued permissive use by a considerable number of persons. At such places, the only change in the law is that the railroad has the duty *to keep a lookout*. If a pedestrian is then seen on the track the duty is the same as in any other case where a person is observed in peril. In Illinois, and in most states, the duty is usually stated to be: not to wilfully and wantonly injure or kill. A few states speak of this duty as one to use reasonable care. The result is substantially the same; it means that a warning signal must be given. Not until it is apparent to the engineer that the pedestrian cannot escape, or does not hear or appear to heed the signal, does any duty arise to attempt stopping the train. Morgan v. New York Cent. R., 327 Ill. 339, supra.

The cases relied upon by plaintiff are: Bernier v. Illinois Cent. R. Co., 296 Ill. 464; McDaniel v. Terminal R. Ass'n, 302 Ill. App. 332; and Shine v. Wabash R. Co., 8 Ill.App.2d 521.

The Bernier case involved persons crossing tracks on a planked crossing near a depot. They were not on business of the railroad. The court said, p. 471: "Where a railroad company has permitted the public to travel over its track for a considerable period of time and a considerable number of people have availed themselves of such use, the railroad company must

232

keep a look out for persons on the track." The facts were that the engineer saw the people on the tracks some distance ahead, that he gave no warning signal, that he looked away and did not again look toward them until just before they were struck. This was held to sustain a finding of wilful and wanton misconduct. It should be noted that the engineer failed in two well recognized duties under the circumstances: the duty to keep a lookout, and the duty to warn when the peril was observed.

The McDaniel case, cited by plaintiff did not involve a train striking a pedestrian. The Shine case involved a crossing in a built up area, with residences on one side of the track and a store on the other side, which circumstances were regarded as sufficient to require a lookout. The crew did keep a lookout, but an infant crawled onto the track, and they saw it was something alive and moving, but could not make it out distinctly, and did nothing about it, although there was ample time.

■ It is readily apparent that the cited cases do not apply here. Assuming that the conditions required keeping a lookout, the undisputed evidence is that the engineer did so. As soon as he saw the danger, he gave the required signal, and saw the persons jump off the track. We know of no case holding a railroad liable under these facts. As soon as the boy was seen attempting to run back the other way, the emergency brakes were applied. This situation has not arisen in Illinois, but it has been held that, where a child is seen to heed a signal and move off the track, his return is not to be anticipated. Smalley v. Rio Grande Western R. Co., 34 Utah 423, 98 Pac. 311.

· We conclude that the defendant's employees did everything the law requires under the circumstances, and that there was no evidence, nor reasonable inference from the evidence, to the contrary, and that the

233

court should have allowed the motion for directed verdict, or for judgment notwithstanding the verdict. It becomes unnecessary to consider the other assigned errors. The judgment is reversed.

Judgment reversed.

CULBERTSON, P. J. and BARDENS, J., concur.