Edwin T. AKERBERG, Plaintiff,

v.

METROPOLITAN RAIL, a corporation, Northeast Illinois Rail Corp., a corporation, Chicago and North Western Transportation Company, a corporation, Carl J. Rowe, Frank F. Burk and Steven V. Johnson, Defendants.

No. 89 C 6895.

United States District Court,
N.D. Illinois, E.D.

Sept. 23, 1991.

Robert Bruce Patterson and Danielle Marie Jaeschke, Drumke & Patterson, Ltd., Chicago, Ill., for plaintiff.

George H. Brant and George T. Brugess, Chicago & North Western Transp. Co., Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the defendants' motion for summary judgment. For the following reasons, the motion is denied.

## FACTS

The present case arose from a commuter rail accident in Woodstock, Illinois, during the early morning hours of July 4, 1987, in which the plaintiff, Edwin T. Akerberg ("Akerberg"), lost both of his legs.[1] The train involved was owned by defendant Northeast Illinois Railroad Corporation and was operated by defendant Chicago and North Western Transportation Company ("CNW") on CNW tracks. The train crew, all CNW employees, included fireman Carl J. Rowe, engineer Francis K. Burk (incorrectly named in the complaint as Frank F. Burk), and conductor Steven V. Johnson.

Prior to the accident, Akerberg drank about ten Jack Daniels and Cokes in four and a half hours at the Cabooze, a Woodstock tavern. He left the Cabooze when it closed at 2:00 a.m. Shortly thereafter, Akerberg lay unconscious between the rails at the Woodstock train station, roughly one foot south of the pedestrian crosswalk.

The train, with Rowe keeping a lookout, was going 25–30 m.p.h. as it approached the Woodstock station. The locomotive was equipped with two headlights, one fixed and one oscillating, both of which were working. When Rowe first saw something on the tracks, he thought it was a bag of garbage. As soon as Rowe realized that it was a person, Rowe began an emergency stop. Burk, who had been sitting in the fireman's seat, could not tell that a person was on the tracks until the train reached Akerberg. The flashing lights and bells at the pedestrian crossing, which warn of approaching trains, were working at the time. The train struck Akerberg at approximately 2:24 a.m. Akerberg was then taken to Memorial Hospital in Woodstock, where his blood was tested shortly after 2:45 a.m., revealing a .272 blood alcohol level.

Akerberg's complaint alleges in part that the defendants were negligent in failing to maintain an adequate lookout, failing to observe Akerberg unconscious on the tracks, failing to stop the train in time to avoid the accident, and in failing to adequately illuminate the pedestrian crosswalk to enable the train crew to see persons on or near the crosswalk.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

1. The facts set forth herein are drawn from the defendants' statement of material facts and from the plaintiff's response thereto, and unless otherwise noted, are uncontradicted.

R.Civ.P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence which supports his complaint. *Id.; see First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Nevertheless, in determining the existence of any genuine issues of material fact, the court must draw all reasonable inferences in the light most favorable to the non-movant. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

Akerberg, to establish a prima facie case of negligence under Illinois law, must show (1) the existence of a duty owed by the defendants to him, (2) a breach of that duty, and (3) that he suffered an injury proximately caused by the breach. *Ward v. K Mart Corp.*, 136 Ill.2d 132, 140, 143 Ill.Dec. 288, 291, 554 N.E.2d 223, 226 (1990). The existence of a duty is a question of law for the court to decide. *Id.* The issues of breach and proximate cause are for a jury to decide, provided there are genuine issues of material fact regarding those issues. *See, Id.* at 156–57, 143 Ill. Dec. at 299, 554 N.E.2d at 234; *Sheahan v. Northeast I.R.C.R. Corp.*, 212 Ill.App.3d 732, 737, 156 Ill.Dec. 816, 819, 571 N.E.2d 796, 799 (1st Dist.1991); *see also Trevino v. Union P.R. Co.*, 916 F.2d 1230, 1235 (7th Cir.1990) (modern trend in Illinois and else- where toward leaving care issues to be decided by a jury "under the broad, unelaborated standard of negligence").

The pedestrian crossing near which Akerberg was struck was in an urban area. Under Illinois law, when a train is approaching such a crossing, the railroad has a duty to keep a lookout and if a pedestrian is spotted on the tracks, to sound a warning and use reasonable care. *Higgins v. Baltimore & O.R. Co.*, 16 Ill. App.2d 227, 232, 147 N.E.2d 714, 717 (4th Dist.1958); *see also Puckett v. Soo L.R. Co.*, 897 F.2d 1423, 1426 (7th Cir.1990) (citing *Higgins*). If it becomes clear that the pedestrian does not hear the warning or is unable to escape, an attempt must be made to stop the train.[2] *Higgins*, 16 Ill.App.2d at 232, 147 N.E.2d at 717.

The defendants in this case had a duty to keep a lookout, which was apparently fulfilled by Rowe, the fireman. Rowe spotted Akerberg on the tracks and began an emergency stop. Initially, however, Rowe thought Akerberg was a bag of garbage. There remains a question as to whether Rowe—or Burk, the engineer, who was sitting next to Rowe—should have realized sooner that Akerberg was a person, that he was unable to respond to the warning bells and lights, and that an emergency stop should be made. It is also reasonably clear that a warning was sounded; it is undisputed that the warning lights and bells at the pedestrian crossing were working. The adequacy of the warning, however, is an issue for the jury based on the particular circumstances of this case. *See Puckett*, 897 F.2d at 1427–28 (citing *Bassett v. Burlington N.R.*, 131 Ill.App.3d 807, 813, 86 Ill.Dec. 855, 858–59, 476 N.E.2d 31, 34–35 (5th Dist.1985), among other cases). In short, questions remain regarding whether the train reasonably could or should have been stopped in time to avoid striking Akerberg. The court therefore finds that genuine issues of material fact remain regarding whether the defendants

---

2. The defendants argue that Akerberg was a trespasser and that as a result they had a lesser duty of care to him. Nevertheless, whether Akerberg was a trespasser or not, once he was spotted on the rails, the defendants had a duty to sound a warning and proceed with care. *Higgins*, 16 Ill.App.2d at 230–31, 147 N.E.2d at 716.

fulfilled all aspects of their duty under the circumstances, and if they did not, whether these alleged breaches proximately caused Akerberg's injuries.

■ The defendants argue, however, that even if a jury could find them negligent, Akerberg's intoxication was a greater cause of his injury which bars him from recovering anything from the defendants. Illinois law bars a personal injury plaintiff from any recovery if the trier of fact finds that the plaintiff's contributory fault constitutes more than 50 percent of the proximate cause of his injury. Ill.Rev. Stat. ch. 110, ¶ 2–1116 (1987). A blood test, such as that taken of Akerberg shortly after the accident, is admissible to prove intoxication in a personal injury case. *Lively v. Kostoff,* 167 Ill.App.3d 384, 392, 118 Ill.Dec. 272, 277, 521 N.E.2d 554, 559 (5th Dist.), *appeal denied,* 121 Ill.2d 571, 122 Ill.Dec. 438, 526 N.E.2d 831 (1988); *see also Cuellar v. Hout,* 168 Ill.App.3d 416, 421–22, 118 Ill.Dec. 867, 870, 522 N.E.2d 322, 325 (2d Dist.) (can prove intoxication at time of accident by subsequent blood test and "retrograde extrapolation"), *appeal denied,* 122 Ill.2d 572, 125 Ill.Dec. 214, 530 N.E.2d 242 (1988). The defendants also correctly point out that they had a right to assume that Akerberg would not disregard their warnings and would exercise appropriate care for his safety. *Sheahan,* 212 Ill.App.3d at 737–38, 156 Ill.Dec. at 820, 571 N.E.2d at 800. Nonetheless, the evidence is sparse on how Akerberg came to be unconscious on the tracks and what inferences should be drawn therefrom. Moreover, as discussed above, a jury could find that the defendants had an opportunity to avoid the accident, and that their failure to do so constituted a proximate cause of Akerberg's injuries.

■ Contributory fault is rarely an issue that can be decided on a motion for summary judgment. *West v. Kirkham,* 207 Ill.App.3d 954, 958–59, 152 Ill.Dec. 836, 839, 566 N.E.2d 523, 526 (4th Dist.), *appeal denied,* 139 Ill.2d 606, 159 Ill.Dec. 118, 575 N.E.2d 925 (1991); *see also Rainey v. City of Salem,* 209 Ill.App.3d 898, 905, 154 Ill. Dec. 463, 468, 568 N.E.2d 463, 468 (5th Dist.1991) (deferential "manifest weight" standard for reviewing jury's contributory fault assessment). The facts in this case are not sufficiently one-sided that the court can attribute the entire, or even most of, the fault for the accident to Akerberg. Therefore it is for a jury to decide whether Akerberg was intoxicated, whether he was contributorily negligent on that or some other basis, and whether his fault is great enough to preclude him from any recovery.

## CONCLUSION

For the reasons discussed above, the defendants' motion for summary judgment is denied.

IT IS SO ORDERED.