MAGNA BANK OF McLEAN COUNTY, f/n/a McLean County Bank, Adm'r of the Estate of Robin A. LeFebvre, a/k/a Robin A. Burns, Deceased, Plaintiff-Appellee, v. RICHARD B. OGILVIE, as Trustee of the Property of Chicago, Milwaukee, St. Paul, and Pacific Railroad Company, *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—91—0649

C. Roy Peterson, of Lord, Bissell & Brook, of Chicago, for appellants.

Robert J. Lenz and David W. Butler, both of Bloomington, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Defendants appeal the verdict in a wrongful death action in which the deceased, Robin A. LeFebvre, was struck and killed by defendant Chicago, Milwaukee, St. Paul, & Pacific Railroad Company's (Milwaukee Road's) freight train at a pedestrian crossing in Glenview which was operated by defendant National Railroad Passenger Corporation (Amtrak), and where the jury reduced the award for decedent's contributory negligence by 30% and awarded $914,680 in damages to plaintiff.

Defendants contend on appeal that: (1) the jury's verdict is against the manifest weight of the evidence because decedent's failure to exercise due care for her own safety was the sole proximate cause of the accident; (2) the defendants did not have a duty to operate the train at a lesser speed or to install gates, flashing lights and signs at the crossing; (3) the court erred in refusing defendants' tendered instruction regarding the duty of an individual at a railroad crossing; (4) the court erred in prohibiting the impeachment of plaintiff's railroad accident expert, Michael Massie; (5) plaintiff's violation of defendant's motion *in limine* regarding testimony on safeguards at other crossings was error; and (6) it was error to allow Dr. Julien Christensen, plaintiff's human factors expert, to give reconstruction testimony and to testify as an expert on the safety features of the crossing.

We affirm the jury's findings.

On October 12, 1983, Robin A. LeFebvre, who lived in South Carolina, was visiting friends in Winnetka before attending a business conference in Milwaukee. Intending to take an Amtrak train, she was driven to the Glenview station by Nicholas Kershaw, who parked in a lot directly west of the railroad tracks. Decedent crossed the tracks on a wooden walkway level to the tracks to purchase a ticket in the station building which was east of the two sets of north-to-south tracks.

After purchasing a ticket, decedent exited the station building, intending to recross the tracks to retrieve her luggage from the Kershaw car. It was raining, with the wind blowing, and she had her umbrella open, angled north-northwest. As the defendant's nonstop freight train approached from the north, decedent walked west across the tracks, apparently failing to look in the direction of the oncoming train, and was struck and killed.

Plaintiff's amended complaint charged both defendants with (1) failure to provide warning lights, bells or a gate at the depot to alert

pedestrians of the danger of oncoming trains; (2) failure to announce to pedestrians the approach of such trains; (3) failure to post signs at the depot that trains pass over the crossing at high speeds without stopping; and (4) failure to provide safe pedestrian access from the parking lot to the station building.

The complaint included three other counts as to the Milwaukee Road, the operator of the freight train: (1) that it operated its train at a speed greater than was warranted under the circumstances; (2) that it failed to blow the train whistle prior to passing the station at a point sufficient to provide a warning to decedent; and (3) that it failed to keep a proper lookout for pedestrians.

At trial, the evidence established that the train consisted of 2 engines, 20 cars and a caboose; that the timetable speed for freight trains through Glenview was 50 miles per hour; that the train was traveling approximately 48 miles per hour as it approached the Glenview station that day; that the train was equipped with a bell and a whistle; and that the bell sounded prior to the incident but the whistle did not.

The lead engine was occupied by a brakeman and an engineer. The brakeman testified that when the train was approximately 1,800 feet from the station, he first saw the decedent standing on the platform. He stated that after she opened her umbrella near the door of the station building, he never took his eyes off of her and watched her walk toward the crosswalk. As she approached the "danger zone" painted on the platform, the brakeman told the engineer that he saw a woman who he did not believe was going to stop, and that he thought she might cross in front of the train. The brakeman testified that he watched the decedent cross the eastern set of tracks and continue walking on the crosswalk toward the tracks on which the freight train was traveling. When the train was approximately 15 railcar lengths from the decedent, the engineer reduced air in order to set the brakes. The brakeman testified that decedent was approximately three railcar lengths from the train when she stepped onto the crosswalk in front of it and the engineer applied the brakes and gave a short blast of the whistle.

Because the engineer was deceased by the time of trial, portions of his discovery deposition were read into evidence. The engineer stated that he only glimpsed decedent as she exited the building and never saw her walk toward the train. He stated that the train was traveling at 48 miles per hour and that he did not sound the whistle or apply the brakes prior to striking decedent.

The Amtrak ticket agent inside the Glenview station at the time of the accident testified that he announced on the public address system that a nonstop freight train was coming through the station. The agent stated that he made the announcement prior to waiting on decedent.

However, two passengers who entered the station building after decedent did not recall hearing an announcement regarding a passing train, either while they were in the building or outside as they approached the building; nor did they see the agent make an announcement. They stated that while they were aware of a freight train passing through the premises because of the loud rumbling the train made, they never heard a whistle before it passed.

Nicholas Kershaw testified that as decedent walked slowly from the station, with her umbrella up against the rain, she never showed any awareness of the approaching train. Mr. Kershaw stated that as he sat in his car in the parking lot, he watched her cross one set of tracks and start across the second set when he saw the locomotive come into the crosswalk and heard a short whistle at the same time. He never heard an announcement over the loudspeaker warning of an approaching train.

Dr. Julien Christensen testified on plaintiff's behalf as a human factors expert. Upon evaluating the safety features at the station, he stated that the wooden plank crosswalk was hazardous because a pedestrian would be concerned about slipping and falling and being hit by a train. Dr. Christensen found that the condition of the crosswalk, with gaps between the worn and uneven planks and the eight-inch downward slant on each end, would occupy much of a pedestrian's attention, especially on a rainy, windy day.

Dr. Christensen also expressed the opinion that the train and the station provided inadequate warnings to decedent of the approaching train, and that 48 miles per hour is not a safe speed when traveling through a passenger station.

Michael Massie testified for plaintiff as a railroad accident investigator, stating that the warning system provided decedent was inadequate. He opined that the train's whistle should have been sounded and the brakes applied prior to striking decedent. He too testified that 48 miles per hour was not a safe speed to travel through a passenger station and that warning devices should have been installed at the crosswalk itself.

Defendant first argues that the jury's verdict is against the manifest weight of the evidence because decedent's failure to exercise due care for her own safety was the sole proximate cause of the accident.

Defendant contends that decedent knew of the existence of the crossing since she had crossed over the tracks to reach the station building; she had an opportunity to see the train had she looked; she had an opportunity to hear the train, its bell and its whistle; an announcement was made over the loudspeaker that a train was coming through; and she failed to look in either direction before stepping onto the crosswalk.

Defendants argue there was no evidence that the Milwaukee Road operated the train at an excessive speed, failed to give an audible warning as the train approached the station, or failed to maintain a proper lookout. Defendants further contend that the absence of crossing gates or flashing lights is not determinative because they are simply other methods of notifying pedestrians of approaching trains. Defendants state that there was evidence in the record that the bell was rung, the whistle was sounded, an announcement was made, and such notice is sufficient.

Defendant's theory, however, ignores the brakeman's testimony that he watched decedent from the time she left the depot until she was struck, a distance of approximately 1,800 feet. Although he advised the engineer that he thought she would not stop, the whistle was never sounded until the point of impact. In addition, the brakes were never set until 15 car lengths away from decedent and applied only three car lengths away when decedent stepped upon the tracks. Moreover, the announcement of the imminent arrival of the train over the public address system is certainly disputed. Together, these failures compound to raise a question as to the adequacy of a warning to decedent of the train's approach.

■ In Illinois, it is well settled that a railroad has a common law duty with respect to crossings to provide adequate warning to travelers that a train is approaching. *Sheahan v. Northeast Illinois Regional Commuter R.R. Corp.* (1991), 212 Ill. App. 3d 732, 735, 571 N.E.2d 796; *Bassett v. Burlington Northern R.R. Co.* (1985), 131 Ill. App. 3d 807, 811, 476 N.E.2d 31; *Stromquist v. Burlington Northern, Inc.* (1983), 112 Ill. App. 3d 37, 41, 444 N.E.2d 1113; *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1970), 121 Ill. App. 2d 445, 455, 257 N.E.2d 216; *Anderson v. Chicago Central & Pacific R.R. Co.* (N.D. Ill. 1991), 771 F. Supp 227, 229.

When a train is approaching a crossing, the railroad has a duty to keep a lookout, and if a pedestrian is observed on or near the tracks in a place of danger, there is a duty to give that person sufficient warning of an approaching train. *Higgins v. Baltimore & Ohio R.R. Co.* (1958), 16 Ill. App. 2d 227, 230, 147 N.E.2d 714; *Puckett v. Soo*

*Line R.R. Co.* (7th Cir. 1990), 897 F.2d 1423, 1426; *Akerberg v. Metropolitan R.* (N.D. Ill. 1991), 773 F. Supp 111, 113; *Anderson*, 771 F. Supp at 229.

■ Whether a train's warning of its approach is adequate and whether particular warning devices at a rail crossing provide adequate protection are questions of fact for the jury and should be decided on a case-by-case basis. *Bassett*, 131 Ill. App. 3d at 813; *Gray v. Terminal R.R. Association* (1962), 37 Ill. App. 2d 376, 379, 185 N.E.2d 700; *Puckett*, 897 F.2d at 1427; *Akerberg*, 773 F. Supp at 113; *Anderson*, 771 F. Supp. at 229.

*Puckett* is factually similar to the present case. On a misty evening, a pedestrian was struck and killed at a crossing equipped with flashing lights, bells and gates for automobiles, but not for pedestrians. The brakeman first observed decedent approximately 150 feet from the crossing, standing on the tracks next to the tracks upon which the train traveled. The brakeman noticed that decedent wore a hat with ear flaps and never looked in the direction of the approaching train. He then watched decedent "shuffle" toward the tracks and immediately yelled for the engineer to engage the emergency brake, but the effort was futile and decedent was killed.

The Seventh Circuit, applying Illinois law, determined that defendant was not entitled to summary judgment and that the evidence presented a genuine issue as to whether the train crew had properly performed its duty to signal the approach of the train. *Puckett*, 897 F.2d at 1426.

The jury in this case was presented with conflicting evidence as to the actions of the train crew, and its verdict against the Milwaukee Road was certainly not against the manifest weight of the evidence.

■ Additionally, Milwaukee Road argues that it was merely following the no-whistle ordinance of the Village of Glenview. However, we find that it was still under a duty to adequately warn decedent, who was observed near the tracks, and that whistling in such an emergency was certainly not prohibited.

We also determine that it is not against the manifest weight of the evidence for the jury to have found defendant Amtrak guilty of negligence in operating and maintaining the station and the crosswalk.

While the Amtrak ticket agent testified that he made a warning announcement regarding the nonstop freight train, at least three other persons in the immediate area did not hear any announcements. The jury could properly have weighed the witnesses' testimony and

determined that an adequate warning of the approaching train was not made.

Further, we find that the jury could have properly determined that the crosswalk area provided inadequate warning of approaching trains since it was devoid of any warning devices for travelers, such as signs, gates and flashing lights. (*Bassett*, 131 Ill. App. 3d at 813; *Gray*, 37 Ill. App. 2d at 379; *Puckett*, 897 F.2d at 1427; *Akerberg*, 773 F. Supp at 113; *Anderson*, 771 F. Supp. at 229.) Evidence was also offered that the poor maintenance of the wooden walkway might have distracted persons crossing the tracks.

Defendants cite several older cases in support of their argument that the jury's verdict was against the manifest weight of the evidence because of the negligence of plaintiff. (*Carrell v. New York Central R.R.* (1943), 384 Ill. 599, 52 N.E.2d 201; *Chicago, Milwaukee & St. Paul Ry. Co. v. Halsey* (1890), 133 Ill. 248, 254, 23 N.E. 1028, 1030; *Chicago & Rock Island R.R. Co. v. Still* (1858), 19 Ill. 499; *Theobald v. Chicago, Milwaukee & St. Paul Ry. Co.* (1898), 75 Ill. App. 208.) We no longer need follow those cases since those plaintiffs faced a contributory negligence standard, not the modified comparative negligence standard now in place. See Ill. Rev. Stat. 1991, ch. 110, par. 2—1116.

While a person who approaches a train has the duty to look and listen, this issue goes to the question of comparative negligence and does not bar a cause of action. *Eaton v. Baltimore & Ohio R.R. Co.* (1990), 198 Ill. App. 3d 137, 142, 555 N.E.2d 790.

The jury should take into account both visible and audible attempts to warn a traveler of an approaching train when deciding whether a party is negligent. The jury in this case determined that defendants were 70% negligent and decedent 30% negligent. We find there is ample support in the record for this verdict as to each of the defendants.

■ Defendants next argue that the trial court erred when it refused to give their tendered instruction regarding the duty of a pedestrian at a railroad crossing.

Defendants tendered this modified version of an Illinois Pattern Jury Instruction titled "Duty of Drivers Crossing Tracks" (Illinois Pattern Jury Instructions, Civil, No. 73.01 (2d ed. 1971) (hereinafter IPI Civil 2d)):

> "A railroad crossing is a place of danger. If you believe from the evidence that as the decedent was approaching the crossing, she knew, or, as in the exercise of ordinary care should have known, that a train approaching the crossing was so close

to the crossing that it would be likely to arrive at the crossing at about the same time as the decedent['s vehicle], then it was the duty of the decedent to yield the right of way to the train." (Brackets denote IPI version.)

Defendants claim that their modified version correctly states Illinois law and sets out their theory of defense. The trial court refused the instruction, stating that it related to automobiles at a crossing but has no application to a pedestrian on a depot crosswalk.

While there is no pattern instruction regarding pedestrians at depot crossings, Supreme Court Rule 239 would allow a non-IPI instruction to be given. (134 Ill. 2d R. 239.) But where a pattern instruction has been given and correctly and adequately charges the jury, the use of additional instructions is improper. *Phelan v. State Farm Mutual Automobile Insurance Co.* (1983), 114 Ill. App. 3d 96, 106, 448 N.E.2d 579; *Kent v. Knox Motor Service, Inc.* (1981), 95 Ill. App. 3d 223, 226-27, 419 N.E.2d 1253.

The trial court accepted plaintiff's tendered instruction (IPI Civil 3d No. 10.03) regarding decedent's duty of care:

"It was the duty of the decedent before and at the time of the occurrence, to use ordinary care for her own safety. A decedent is contributorily negligent if (1) she fails to use ordinary care for her own safety; and (2) her failure to use such ordinary care is a proximate cause of her death.

The decedent's contributory negligence, if any, does not bar plaintiff's recovery. However, the total amount of damages to which plaintiff would otherwise be entitled is reduced in proportion to the amount of decedent's negligence. This is known as comparative negligence."

The trial court also allowed plaintiff's tendered instructions defining ordinary care and negligence, which were based upon IPI Civil 3d Nos. 10.01 and 10.02.

Defendants' tendered instruction would not have told the whole story. While a traveler generally must yield the right of way to a train, if it becomes clear that the pedestrian does not hear the warning, will not heed the signal or is unable to escape, then it is the duty of the crew to attempt to stop the train. *Robertson v. New York Central R.R. Co.* (1944), 388 Ill. 580, 584, 58 N.E.2d 527; *Morgan v. New York Central R.R. Co.* (1927), 327 Ill. 339, 346, 158 N.E.2d 724; *Higgins,* 16 Ill. App. 2d at 232; *Akerberg,* 773 F. Supp at 113.

We affirm the trial court's ruling since we find that plaintiff's three cited instructions adequately apprised the jury of decedent's

duty under relevant law, and that defendants' proposed instruction is not an accurate statement of the relevant law in this case.

■ Defendants next argue that the trial court erred in preventing impeachment of plaintiff's railroad expert by evidence of a prior accident involving the expert.

Michael Massie testified as a railroad accident expert, having investigated more than 300 railroad accidents, 66 involving train/pedestrian incidents. In the present case, Mr. Massie testified that the train crew should have blown the whistle immediately upon observing decedent near the station building.

Defendants argue that they should have been allowed to impeach Mr. Massie's testimony regarding appropriate use of the whistle by showing he acted inconsistently in a 1978 accident in which he was the engineer on a train that rear-ended a second train. Mr. Massie stated that before that collision, he did not have time to blow the whistle of his train to alert the second train's crew of the danger and jumped off of the train.

The trial court refused to allow the impeachment because Mr. Massie did not hold himself out to be an expert in 1978, the incident was too remote in time, and a trial court at the time found Mr. Massie was not negligent.

We agree with the reasoning expressed by the trial court. Further, we reject defendants' contention that the accident establishes that Mr. Massie's expert credentials are a sham. The record adequately demonstrates that he has extensive experience in investigating accidents and any accident he may have been involved in 12 years prior to trial bears little reflection upon his status as an expert. If anything, such an experience may have helped to shape his understanding of similar accident situations, but certainly does not relate to the present case involving a pedestrian crossing at a depot.

■ Defendants next claim that plaintiff violated a motion *in limine* barring evidence of protective devices at other crossings without showing substantial similarity between those crossings and the crossing at Glenview, and that such error requires a mistrial.

Three photographs of other crossings were admitted to illustrate the testimony of plaintiff's human factors expert Dr. Christensen, who stated that there were devices and systems available at the time of the accident that could have prevented decedent's death had they been in place at Glenview.

Plaintiff established foundation for the admission of the photographs by Dr. Christensen's testimony that the crossings are located in areas with weather and topography similar to Glenview; each had

two sets of tracks that pedestrians cross; each had a crosswalk made of a material other than concrete, two involving wooden planks as in Glenview; each had a passenger station on one side of the tracks and parking on the other; each crosswalk had a straight approach of track on either side for some distance; and, at each, trains and pedestrians crossed at the same level, wherein the pedestrian crosswalk intersected the path of the train.

Defendants argue that plaintiff failed to establish similarities regarding the numbers of pedestrians that use the crossings and the number of freight and passenger trains that use the crossings.

We find plaintiff has established substantial similarity between the Glenview crossing and the crossings shown in the three photographs. Further, defendant failed to object to foundation based on a lack of statistical information regarding train and pedestrian traffic at the other crossings. While defendants addressed this in their cross-examination of plaintiff's expert, they failed to object on that basis at trial.

■ Defendants next argue that the testimony of Dr. Christensen was reconstruction testimony that was speculative as to what decedent thought and unnecessary since there was at least one eyewitness. Defendants contend there was no basis for the witness' opinion and that such an opinion as to what decedent thought was not beyond the ken of the average juror, since anyone could speculate as to her state of mind.

While plaintiff does not deny that the expert's testimony is reconstruction testimony, it argues that his testimony did not contradict eyewitness testimony, but rather helped to explain why decedent was not aware of the approach of the train by reference to scientific principles relating to human factors. Plaintiff contends that Dr. Christensen's testimony is an attempt to rebut defendants' assertion that decedent's negligence was the sole proximate cause of her death; that her failure to stop, look and listen was a function of the inadequacy of the warnings given her and the competing stimuli which may have distracted her (the uneven rain-slick crosswalk and rain).

Because eyewitness testimony is preferred, reconstruction testimony is generally restricted; however, it may be allowed in addition to eyewitness testimony if (1) the expert is qualified in his field, and (2) if the testimony will aid the fact finder in the resolution of the dispute. *Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 392 N.E.2d 1; *Loseke v. Mables* (1991), 217 Ill. App. 3d 521, 524, 577 N.E.2d 796; see *Augenstein v. Pulley* (1989), 191 Ill. App. 3d 664, 673-81, 547 N.E.2d 1345, *appeal denied sub nom. Augenstein v. Steinmetz* (1990), 131 Ill. 2d 557, 553 N.E.2d 393 (extensive discussion of

relevancy of eyewitness testimony to admissibility of reconstruction testimony).

Plaintiff cites as support for the witness' testimony *Poltrock v. Chicago & North Western Transportation Co.* (1986), 151 Ill. App. 3d 250, 502 N.E.2d 1200, wherein Dr. Christensen's expert reconstruction testimony was admitted to explain why decedent "froze" as she looked up and saw the train, but failed to move quickly enough through the crosswalk before being struck and killed. Plaintiff cites the trial court's statement that the testimony was relevant since it concerned how people react to stressful situations and helped explain decedent's actions to the jury.

The trial court's admission of Dr. Christensen's testimony in the present case was not an abuse of discretion since it may have helped the jury to determine decedent's degree of negligence by explaining her actions in terms of concepts that the average juror might not know or might overlook, such as "competing stimuli."

Defendants argue that Dr. Christensen implied facts not in evidence—that decedent was looking down as she walked, that she was concerned about falling on the uneven wooden planks in the crosswalk, or slipping on the wet boards. However, there was no contradictory testimony by any eyewitnesses as to where decedent was looking when she walked on the crosswalk. The brakeman could not see her face because of the umbrella, and Mr. Kershaw was not certain as to the focus of her attention.

Further, the record supports plaintiff's argument that the witness was explaining what a reasonable person would do under the same circumstances, not what decedent herself was thinking. *Poltrock* supports such a description of how a person in the same circumstances as decedent would have reacted at the time of the accident. *Poltrock*, 151 Ill. App. 3d at 255.

■ Finally, defendants contend it was error for the trial court to allow Dr. Christensen to testify as to the safety features of the Glenview crossing because he is not qualified as a railroad safety expert.

Plaintiff argues that Dr. Christensen was tendered as a human factors expert, not a railroad safety expert. His testimony was intended to explain why the crosswalk was hazardous; how people react to competing stimuli; and why some warnings are effective while others are not; how a person may adapt to a constant stimulus such as a bell; and why people have difficulty concentrating on more than one thing at a time.

We agree with the trial court that the experience earned by the witness in his 40 years in the field qualifies him to give an opinion as

to which warning devices may be more effective or whether decedent unreasonably remained unaware of the approaching train under these particular circumstances.

For all of the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

RIZZI and TULLY, JJ., concur.