**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0850n.06
Filed: December 14, 2007

**No. 06-4487**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **Terry Petre,** Husband, Father, and Executor of the Estates of Wanda Petre, Chelsey Petre and Amber Petre, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| Plaintiff-Appellant, | ) ) | NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| **Norfolk Southern Corp.; Florence Township, Ohio,** | ) ) | **O P I N I O N** |
| Defendants-Appellees. | | |

**BEFORE:** SILER, GIBBONS, and McKEAGUE, Circuit Judges.

**McKeague, Circuit Judge.** This appeal arises out of a tragic automobile-train collision that claimed the lives of five individuals. Alleging that the collision resulted from the negligence of the railroad and the township where the accident occurred, Plaintiff filed suit in Ohio state court. Defendants removed the action based on diversity of citizenship. The district court granted summary judgment for Defendants. Plaintiff timely appealed. For the reasons stated below, we **AFFIRM** the well-reasoned decision of the district court.

**I. BACKGROUND**

On July 1, 2001, in rural Blakeslee, Ohio, an automobile operated by Mrs. Wanda Petre collided with a freight train owned and operated by Defendant Norfolk Southern Corp. ("Norfolk"). The accident occurred on County Road I, which is located within the boundaries of Defendant

Florence Township. Mrs. Petre, along with her two children and two of their friends, perished in the accident.

Mrs. Petre and the children, all residents of Indiana, were in the Blakeslee area for a church picnic. At the time of the collision, they were traveling back to Indiana on County Road I. County Road I is a two-lane rural road that intersects with railroad tracks owned and operated by Norfolk. As a rural crossing, it is not equipped with crossbars, lights, or other active warning devices. However, the crossing does have two standard reflective crossbucks, and there is a yellow railroad crossing warning sign approximately 800 feet from the crossing.

The Norfolk train involved in the collision was equipped with a RailView Event Data Recorder ("RailView"). The RailView device is mounted near the engineer's window and along with providing a video recording, it reports the train's speed, whistle activity, and braking activity. RailView indicates that at the time of the collision, the train was traveling 61 m.p.h. with its whistle sounding. There is some indication that moments prior to the collision, Mrs. Petre noticed the impending peril and unsuccessfully attempted first to speed up and then to brake. The engineer of the train stated that he did not realize the car was not going to stop at the crossing until it was too late.

The husband of Mrs. Petre and father of two of the deceased children, Terry Petre ("Plaintiff"), filed the instant action in Ohio state court. It was removed to the United States District Court for the Northern District of Ohio on diversity of citizenship grounds, where it was referred to a magistrate judge by consent of the parties. The district court granted Norfolk's motion for partial summary judgment with regard to the adequacy of the warning devices installed at the crossing

because the Federal Railroad Safety Act preempts such a claim. The district court's preemption decision has not been appealed. The district court later granted full summary judgment for Norfolk and Florence Township. Plaintiff appealed.

## II. ANALYSIS

This court reviews a district court's grant of summary judgment *de novo*. *Nichols v. Moore*, 477 F.3d 396, 398 (6th Cir. 2007). The mere allegation of a factual dispute is insufficient to "defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* issue of *material* fact." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). A "genuine" dispute is one that would permit a reasonable jury to return a verdict in favor of the nonmoving party, and a fact is "material" only if its resolution could affect the outcome of the litigation under the applicable law. *Id*.

As a matter over which federal jurisdiction exists because of diversity of citizenship, the applicable substantive law is that of the state in which the district court sits. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). Thus, Ohio law governs the resolution of the instant case. To survive a motion for summary judgment on a negligence claim under Ohio law, the plaintiff must establish the existence of a genuine issue of material fact "as to whether the defendant: (1) owed a duty of care to the plaintiff; (2) breached that duty; and (3) the breach of that duty proximately caused (4) injury to the plaintiff." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2005) (citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 693 N.E.2d 271, 274 (Ohio 1998)). Where the plaintiff fails to establish the existence of one of these four essential elements,

summary judgment for the defendant is appropriate. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The crux of the dispute in the instant case is whether Defendants' conduct was the proximate cause of the collision. Although proximate cause is usually a question of fact for the jury, a defendant is entitled to summary judgment "if the plaintiff's evidence on the issue of proximate cause requires mere speculation and conjecture to determine the cause of the event at issue." *Nye*, 437 F.3d at 564.

## A. Discussion of Norfolk's Alleged Negligence

A thorough review of the record and the applicable case law supports the district court's holding that there is no evidence from which a reasonable jury could find that the conduct of Norfolk proximately caused this tragedy. Although Plaintiff makes various arguments in an attempt to establish error on the part of the district court, all of them lack merit.

### 1. Visual Obstructions and the "Look and Listen" Requirement

Plaintiff first argues that the district court erred in holding that Norfolk was not the proximate cause of the accident because Mrs. Petre failed to "look and listen" before entering the crossing. According to Plaintiff, the district court failed to recognize the significance of the Ohio Supreme Court's decision in *Tolliver v. Consol. Rail Corp.*, 463 N.E.2d 389 (Ohio 1984), with regard to the application of the "look and listen" requirement where a motorist's view is obstructed.

In Ohio, a motorist and railroad company owe each other a reciprocal duty of care to avoid collisions. *Wooten v. CSX R.R.*, 842 N.E.2d 603, 611 (Ohio Ct. App. 2005). A motorist has a common law duty to "both [] look and [] listen for approaching trains, and the looking and listening

must be at such a time and place and in such a manner as to be effective for that purpose." *Zuments*

*v. Balt. & Ohio R.R. Co.*, 271 N.E.2d 813, 814 (Ohio 1971) (per curiam). Additionally, pursuant to

Ohio Revised Code ("O.R.C.") § 4511.62(A)(1), a motorist "approach[ing] a railroad grade crossing,

[] shall stop within fifty feet, but not less than fifteen feet from the nearest rail of the railroad if . .

. (e) [a]n approaching train is emitting an audible signal or is plainly visible and is in hazardous

proximity to the crossing." However, the motorist's failure to "look and listen" will not necessarily

preclude recovery if the railroad was negligent in maintaining the area surrounding the crossing. *See*

*Cates v. Consol. Rail Corp.*, 653 N.E.2d 1229, 1234-35 (Ohio Ct. App. 1995). As the Ohio Supreme

Court explained in *Tolliver,* the *Zuments* holding does not preclude a plaintiff from recovery if there

is "a severe visual obstruction at the crossing site, i.e., heavy vegetation." *Tolliver*, 463 N.E.2d at

390. However, such an obstruction must have been located on the railroad company's right-of-way.

*See Wooten*, 842 N.E.2d at 613. Under Ohio law, a railroad is responsible for removing any

"obstructive vegetation upon its right-of-way at each intersection with a public road or highway, for

a distance of six hundred feet or a reasonably safe distance from the roadway . . . ." O.R.C. §

4955.36.

Where any claimed obstruction is outside of the railroad's right-of-way, O.R.C. § 4955.36[1]

"is not a basis for liability on the part of [the railroad]." *Wooten*, 842 N.E.2d at 613. In *Wooten*, the

plaintiff was severely injured in a car-train collision at a rural crossing, and she filed suit alleging

---

[1]Although the *Wooten* court referenced O.R.C. § 2955.36 in this portion of its opinion, there is no such provision in the Ohio Revised Code, and it is clear from *Wooten*'s earlier discussion of O.R.C. § 4955.36 that the court's reference to § 2955.36 was merely a typographical error.

that the accident was caused by a corn field that obstructed her view of the tracks. *Id*. at 606. It was clear from the available evidence that Wooten entered the crossing without first looking and listening, even though she could have stopped within the statutory fifteen feet from the tracks and seen the approaching train. *Id*. at 613. Affirming summary judgment for the railroad, *Wooten* rejected the plaintiff's argument because "the corn at issue was located on private property outside of the railroad right-of-way." *Id*.

In the instant case, Plaintiff alleges that his wife's view of the tracks was impeded by "several momentary view obstructions along County Road I, the last of which is located approximately 132 feet from the crossing." These impediments include a farmhouse, several outbuildings, and some trees. Plaintiff claims that Norfolk's failure to remove these visual impediments triggers the *Tolliver* decision and necessitates reversal of the district court. We disagree. As the district court explained, Norfolk had no duty to remove the obstructions of which Plaintiff complains because they were not on its right-of-way. It is undisputed that the alleged obstructions are located on private property some 130 feet from the crossing. The photographs in the record show that the area immediately surrounding the railroad crossing in question is open, with the only shrubbery being ground-level vegetation that does not impede a motorist's view. Here, as in *Wooten*, there is no evidence that Mrs. Petre's view down the tracks would have been impeded had she stopped and listened within the fifteen feet required by O.R.C. § 4511.62.

In an attempt to establish error on the part of the district court, Plaintiff argues that this case is governed by *Tolliver*. As stated above, *Tolliver* held that a driver's failure to look and listen does not warrant judgment as a matter of law for the railroad where there is a "*severe* visual obstruction

at the *crossing site*." *Tolliver*, 463 N.E.2d at 390 (emphasis added). Although the Ohio Supreme

Court's decision does not provide a description of the obstructions in question, the lower court's

opinion in *Tolliver* states that the overgrowth at the crossing "was so severe that [motorists] had to

'creep onto the track to see if anything was coming.'" *Tolliver v. Consol. R. Corp.*, No. 26-CA-82,

1982 Ohio App. LEXIS 13752, at *5 (Ohio Ct. App. Dec. 29, 1982). Based on this description,

*Tolliver* is distinguishable from the instant case. First, unlike the case *sub judice*, the impediments

in *Tolliver* were undoubtedly on the railroad's right-of-way. Second, a review of the photographs

provided in this case illustrates that there were no obstructions present at the County Road I crossing

itself, let alone a "severe" obstruction of the type existing in *Tolliver*.

In addition to his mistaken reliance on *Tolliver*, Plaintiff argues that two decisions from this

court require reversal. He points to *Carpenter v. Norfolk & W. Ry. Co.*, 238 F.3d 420, 2000 WL

1785537 (6th Cir. 2000) (unpublished table decision), for the proposition that an obstruction 170 feet

from a railroad crossing is sufficient to survive summary judgment. Plaintiff misstates the holding

of *Carpenter*, where this court actually affirmed summary judgment for the railroad because there

was "no longer a genuine issue of material fact as to whether 170 feet was a sufficient distance for

a driver to see an approaching train and stop a safe distance from the tracks." *Id*. at *1.[2] What

---

[2]The *Carpenter* decision that Plaintiff cites is the second opinion from this court arising out of the same fact pattern. *See Carpenter v. Norfolk & W. Ry. Co.*, No. 96-3871, 1998 U.S. App. LEXIS 7694, at *9 (6th Cir. Apr. 16, 1998) ("*Carpenter #1*"). In *Carpenter #1*, the court remanded the matter to the district court for additional discovery to determine whether there was a genuine issue of material fact regarding whether 170 feet was a sufficient distance to react to an approaching train. After additional discovery, the district court again granted summary judgment for the railroad, and in *Carpenter #2* this court affirmed summary judgment over Judge Clay's dissent. *See Carpenter #2*, 2000 WL 1785537, at *1-2.

Plaintiff characterizes as *Carpenter*'s holding, *see* Appellant's Br. at 16 n.8, is actually the position taken by the dissent. *See id*. at *3 (Clay, J., dissenting) (stating "I believe that a genuine issue of material fact remains . . . as to whether the 170 feet was a sufficient distance for a driver traveling the speed limit to have safely stopped."). Accordingly, *Carpenter* lends no support to Plaintiff.

Plaintiff also argues that our decision in *Stoler v. Penn. Cent. Transp. Co.*, 583 F.2d 896, 898 (6th Cir. 1978), bolsters his position. The *Stoler* holding is distinguishable because it addressed whether the crossing was extrahazardous under Ohio law such that additional warning devices were required; no such issue is before this court because of the district court's preemption decision. Here, the district court properly relied on cases such as *Wooten* and *Zumstein* in concluding that there were no visual obstructions on Norfolk's right-of-way that rendered Mrs. Petre unable to effectively "look and listen" before entering the crossing.

## 2. Train Speed

In addition to his visual obstruction argument, Plaintiff alleges that the district court erred in concluding that no reasonable jury could find that Norfolk's violation of the 60 m.p.h. speed limit was the proximate cause of the collision. Pursuant to federal law, a train traversing the crossing at County Road I shall not exceed 60 m.p.h. *See* 49 C.F.R. § 213.9. RailView indicates that at the time of the collision, Norfolk's locomotive was traveling at 61 m.p.h. The evidence suggests that had the train been traveling at 60 m.p.h., instead of 61 m.p.h., Mrs. Petre would have had an additional two-tenths of a second to react to the train. Plaintiff posits that because additional time would have existed had the train been traveling the speed limit, there is sufficient evidence from which a reasonable jury could conclude that Norfolk caused the collision.

We have previously rejected this same argument in a prior case. *See Carpenter #1*, 1998 U.S. App. LEXIS 7694, at *10-11. In *Carpenter #1*, the train in question was also traveling at 61 m.p.h. in a 60 m.p.h. zone when it collided with the plaintiff's car. *Carpenter #1*, 1998 U.S. App. LEXIS, at *10. Likewise, the evidence in *Carpenter #1* indicated that had the train been traveling 60 m.p.h. the motorist would have had an additional two-tenths of a second to respond. *Id*. Affirming summary judgment for the railroad, this court explained that "reasonable minds could not conclude that this additional [time] would have been sufficient time [for the deceased] to shift gears, and move away from the tracks." *Id*. at *11; *see also Hotchkiss v. Nat'l R.R. Passenger Corp.*, 904 F.2d 36, 1990 U.S. App. LEXIS 8694, at *22-23 (6th Cir. 1990) (unpublished table decision) (explaining that "[s]peed is not causal merely because the train arrived at the crossing the instant that it did, while if it had been going slower, the snowplow might have safely crossed in front of it."). This case is indistinguishable from *Carpenter #1*, and Plaintiff's argument that had the train been traveling 60 m.p.h. the collision would not have occurred is mere speculation of the type that is insufficient to survive summary judgment.

### 3. Activation of the Train's Whistle

Next, Plaintiff argues that the district court erred in determining that no reasonable jury could conclude that Norfolk's failure to sound the train's whistle until after it had passed the area designated by law was a proximate cause of the accident. According to O.R.C. § 4955.32(B)(1), the engineer of a train "shall sound [the] whistle at a distance of at least eighty and not further than one hundred rods from such crossing and ring [the] bell continuously until the engine passes the

crossing."[3]  In order to alert a train's crew of the appropriate time to sound the whistle, there are

"whistle posts" installed alongside the tracks.  It is uncontroverted that in this case the train did not

sound its whistle until it had passed the whistle post.

While a technical violation of O.R.C. § 4955.32(B)(1) may constitute negligence *per se*,

summary judgment for the railroad is appropriate where there is evidence that the whistle did

eventually sound, and there is no evidence that the failure to timely activate the whistle proximately

caused the collision.  *Henson v. Norfolk S. Corp.*, No. 97CAE-05-016, 1997 Ohio App. LEXIS 5951,

at *12 (Ohio Ct. App. Dec. 15, 1997).  In *Henson*, the evidence indicated that the engineer first

sounded the whistle when the train was 1219 feet from the crossing, which was approximately 1000

feet beyond the statutory requirement.  *Id*.  Notwithstanding the statutory violation, *Henson* affirmed

summary judgment for the railroad because:

> reasonable minds could not find the appellees' negligence *per se* was a proximate
> cause of the accident.  The statute intends to provide sufficient warning to motorists
> that a train is approaching.  The facts do not demonstrate decedent ever heard the
> whistle, and we conclude on these facts *appellant cannot show that had the whistle
> sounded sooner, decedent would have avoided the collision*.

*Id*. at *13 (emphasis added).

Here, like in *Henson*, the allegation made by Plaintiff is that Norfolk's failure to sound the

whistle at the whistle post was negligence *per se* and resulted in less time for Mrs. Petre to react.

RailView establishes that the engineer in the instant case was sounding the whistle leading up to the

moment of impact.  Despite this fact, Mrs. Petre—whose window was rolled down—proceeded to

---

[3]Eighty to one hundred rods is roughly the equivalent of 1320 to 1620 feet.  *Sheets v. Norfolk
S. Corp.*, 671 N.E.2d 1364, 1373 (Ohio Ct. App. 1996).

enter the crossing. Evidence presented by Plaintiff's own expert indicates the fallacy of the argument that an extra three seconds of whistle-blowing would have prevented the accident from occurring. According to Dr. David Lipscomb, an audiologist, Mrs. Petre likely would have been unable to hear the whistle until approximately four seconds before the train reached the crossing. He further opined that "the rail view suggested that she wasn't alerted. As far as I could discern, I watched it repeatedly, there was no head movement that I could discern, which I think if an individual approaching a track were alerted by a train horn they'd start looking for it." Joint App'x at 1090.

Based on Dr. Lipscomb's testimony and common sense, a reasonable jury could not conclude that Norfolk's delay in sounding the whistle proximately caused this accident. Plaintiff has failed to explain how Mrs. Petre would have been alerted to the train had the whistle started to sound three seconds earlier at 1320 feet from the crossing, given that it failed to sufficiently alert her when it started to sound at approximately 1000 feet from the crossing. Thus, we agree with the district court that "it is illogical to conclude that the 3-second delay in sounding the whistle" was a proximate cause of the collision.

### 4. Train Crew's Duty to Maintain a Proper Lookout

Plaintiff further argues that summary judgment was inappropriately granted by the district court because the train's crew failed to maintain a proper lookout. Under Ohio law, "[i]t is the duty of a locomotive engineer to keep a lookout on the track ahead of the train." *Nye*, 437 F.3d at 567 (quoting *Cates*, 653 N.E.2d at 1237). However, a train crew is not negligent for presuming that motorists approaching a crossing will stop short of the tracks and yield to an oncoming train. *Cates*, 653 N.E.2d at 1237. Given the facts of this case, we agree with the district court that no reasonable

jury could conclude that the collision was caused by the crew's failure to maintain a proper lookout. Although the conductor was apparently reading a rule book and did not notice the approaching car, the evidence shows that by the time the engineer—who was paying attention—realized that Mrs. Petre was not going to stop, it was too late to take any emergency precautions. Accordingly, Plaintiff's argument fails.

## B. Discussion of Florence Township's Alleged Negligence

Plaintiff also argues that Florence Township failed to appropriately paint a railroad warning marking on the roadway and such a failure was causally connected to the collision. County Road I, which is located within Florence Township, was resurfaced in 1992. Prior to resurfacing, County Road I had painted road markings several hundred feet before the crossing. Plaintiff alleges that Florence Township's failure to paint the markings on the resurfaced road was negligent and contributed to the collision. Florence Township responds by arguing that as a political subdivision it is immune from suit under O.R.C. § 2744.02(A)(1). Even if it is subject to suit, the township maintains that there is no evidence that the lack of road markings was a proximate cause of the collision.

Rather than engage in a detailed analysis of Ohio's political subdivision immunity statute—which would force us to determine whether the Ohio Supreme Court would view the failure to paint the markings on the resurfaced road as a nuisance such that O.R.C. § 2744.02 immunity is unavailable—we choose to assume, without deciding, that Florence Township is not subject to immunity and affirm the district court's decision for Florence Township on the merits. With regard to the merits, Plaintiff has failed to produce evidence from which a reasonable jury could conclude

that the absence of the road markings in question was a causal factor in the collision. There is a yellow railroad crossing warning sign 800 feet prior to the crossing, there are reflective crossbucks at the crossing, and the crossing itself is raised above the normal road level; it is difficult to imagine that the existence of painted road markings warning of the crossing would have prevented Mrs. Petre from driving into the path of the train when all of the other measures failed to do so. Accordingly, the district court correctly granted summary judgment in favor of Florence Township.

While the circumstances of the present case are tragic, and we have sympathy for Plaintiff's loss, there is no evidence from which a reasonable jury could find that the conduct of either Norfolk or Florence Township proximately caused the collision.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.