NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0210n.06

No. 11-3020

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| MARY SHAFFER, Administrator of the Estate of Deceased Bobby J. Shaffer, | **FILED** **Feb 22, 2012** LEONARD GREEN, Clerk |
| Plaintiff-Appellant, | |
| v. | On Appeal from the United States District Court for the Northern District of Ohio |
| CSX TRANSPORTATION, INC., | |
| Defendant-Appellee. | |

_____/

BEFORE:     MERRITT and COOK, Circuit Judges; and COX, District Judge.[*]

**COX, District Judge**.  This appeal arises out of a tragic accident that occurred on April 10, 2008, when two individuals were struck and killed by a moving train.  Alleging that the accident resulted from the negligence of the railroad, the Estate of one of those individuals filed suit in Ohio state court.  The defendant railroad removed the action based on diversity jurisdiction.  The district court granted summary judgment, ruling that the undisputed evidence in the record establishes that the railroad satisfied its duty of care to the Estate's decedent.  The Estate timely appealed. The panel unanimously agrees that oral argument is not needed.  Fed. R. App. P. 34(a). For the reasons stated below, we **AFFIRM**.

_____

[*]The Honorable Sean F. Cox, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

## I.

In the very early morning hours of April 10, 2008, Bobby Shaffer and Ray Ankney were walking near railroad tracks in Defiance, Ohio that are owned and operated by CSX Transportation, Inc. ("CSX"), near milepost BI 87.5. It is undisputed that they were trespassing on CSX's property.

There are two train tracks in that area, Tracks 1 and 2, which run parallel to each other. Track 1 is north of Track 2. There is a slight bend in both tracks just west of milepost BI 87.5.

CSX's Train Q35109 ("Train 109"), which was being operated by Conductor Terry Malone, was traveling westbound on Track 2. At the same time, CSX's Train Q11409 ("Train 409"), which was being operated by Conductor Danny Branham and Engineer William Knecht, was traveling eastbound on Track 1. Both trains were simultaneously approaching milepost BI 87.5.

Around milepost BI 87.5, Train 109 passed Shaffer and Ankney walking eastbound in the area just north of Track 1. As Train 109 passed the two men, they were walking outside the railroad tracks and appeared to be clear of any train traffic on Track 1. One of the two men acknowledged the train's presence by waving as Train 109 passed by.

After seeing the men, Malone radioed Train 409 and informed its crew that there were two individuals walking north of Track 1, just ahead of Train 409's position. That communication was received by Branham and Knecht just as the heads of the two trains were passing each other.

Train 409's crew then illuminated Train 409's bright headlight and applied the train's horn to warn the individuals ahead of its presence. In addition, Train 409's ditch lights were on, the locomotive bell was ringing, and the crew maintained a lookout ahead.

2

Within seconds of receiving the radio transmission from Train 109, Train 409 rounded the bend in the tracks and Knecht saw Shaffer and Ankney walking inside the rails of Track 1 ahead of Train 409. As Train 409 approached, Ankney looked over his shoulder, became aware of the train coming up behind them, and moved outside the rails to the north. Shaffer, however, who now appeared to be staggering, remained inside the rails. Ankney then walked back into the path of the train and reached out to pull Shaffer away from the tracks just as Train 409 was reaching their location. Shaffer and Ankney then disappeared from Knecht's view. Knecht applied the emergency brake and the train ultimately stopped around milepost BI 87.0. Train 409 struck and killed both Shaffer and Ankney. Less than five seconds elapsed from the time that Knecht first saw the two men and the time of impact.

Testing later revealed that both Shaffer and Ankney had elevated blood alcohol levels.

## II.

Mary Shaffer, the administrator of Bobby Shaffer's estate ("the Estate"), filed suit in state court, asserting negligence and wrongful death claims against CSX. The action was removed to federal court based upon diversity jurisdiction.

Following the close of discovery as to liability, CSX filed a motion for summary judgment on May 14, 2010. CSX asserted that the undisputed evidence shows that it satisfied its duty to the Estate's decedent and complied with the applicable standard of care. CSX filed several exhibits in support of its motion, including Affidavits from Malone, Branham, and Knecht. CSX's exhibits also included two exhibits that were marked as Exhibits H and I. Each of those two exhibits consisted

of a single sheet of paper stating that the Digital Video Recordings ("DVRs") of the two trains "are protected by proprietary software" but are "available for viewing upon request through counsel for CSXT." CSX did not file copies of the DVRs with the district court.

On May 20, 2010, the Estate filed a "Notice of Filing of Plaintiff's Expert Report" which attached a copy of an unsworn expert report from Plaintiff's expert. That unsworn expert report indicates that the Estate's expert reviewed the DVRs from the two trains.

On June 11, 2010, the Estate filed a brief opposing CSX's motion. The only exhibit that the Estate filed with its response is Exhibit 1, which is a single still frame, of very poor quality, purportedly from Train 409's DVR. The Estate's response also referenced the unsworn expert report that Plaintiff had filed on May 20, 2010. Although it appears that the Estate's counsel had access to the DVRs, the Estate did not file copies of the DVRs with the district court.

The district court did not hold a hearing on the motion. After full briefing by the parties, the Court issued a Memorandum Opinion, granting summary judgment in favor of CSX. The district court agreed with CSX that "the undisputed evidence shows that it satisfied its duty to the Plaintiff's decedent and complied with the applicable standard of care." (District Court Opinion at 4).

Thereafter, the Estate filed this timely appeal. The Estate raises two issues on appeal: 1) whether CSX had a duty to exercise ordinary care upon learning of the presence of discovered trespassers; and 2) whether the district court erred in granting summary judgment because an issue of fact exists as to the length of time that passed between the moment CSX learned of the presence of trespassers on its railroad tracks and the moment of impact.

4

III.

The district court had diversity jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291.

Diversity jurisdiction requires a federal court to apply the substantive law of the state in which it sits. *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006). Federal courts, however, may apply their own procedural rules. As a result, we apply Ohio negligence law and the federal summary judgment standard. *Id.*

We review the district court's grant of summary judgment *de novo*. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We draw all reasonable inferences from the record in the light most favorable to the nonmoving party, and we only grant summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Appellate courts reviewing a grant of summary judgment may affirm on any grounds supported by the record, even on grounds that are different from those considered or relied on by the district court. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 569 (6th Cir. 2001).

IV.

Under Ohio law, in order to defeat a motion for summary judgment on a negligence claim, a plaintiff must establish that a genuine issue of material fact [exists] as to whether the defendant:

5

(1) owed a duty of care to the plaintiff; (2) breached that duty; and (3) the breach of that duty proximately caused (4) injury to the plaintiff. *Nye,* 437 F.3d at 563.

"In Ohio, the status of the person who enters upon the land of another (i.e., trespasser, licensee, or invitee) continues to define the scope of the legal duty that the landowner owes the entrant." *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287, 291 (Ohio 1996). It is undisputed that Shaffer was a trespasser on CSX's property.

Under Ohio law, a distinction exists between undiscovered and discovered trespassers. Ordinarily, a landowner owes no duty to undiscovered trespassers other than to refrain from injuring such trespassers by willful or wanton conduct. *McKinney v. Hartz & Restle Realtors, Inc.*, 510 N.E.2d 386, 388 (Ohio 1987). Furthermore, a railroad owes no duty to anticipate or prevent the presence of trespassers. *Gladon*, 662 N.E.2d at 293. However, when a trespasser "is discovered in a position of peril, a landowner is required to use ordinary care to avoid injuring him." *Id.*

We agree with the Estate, and the district court, that Shaffer and Ankney were discovered trespassers and were therefore owed a duty of ordinary care by CSX once CSX discovered their presence on the tracks. Thus, we review *de novo* to decide whether a reasonable jury could find that CSX breached that duty.

V.

We agree with the district court that the undisputed evidence establishes that CSX satisfied its duty of ordinary care under the facts presented here.

When Train 109 observed Shaffer and Ankney, the two men were walking to the north of Track 1 and appeared to be located clear of any traffic on Track 1. They did not appear to be in a position of peril. To the contrary, Shaffer and Ankney appeared to be alert adults who acknowledged and appreciated the presence of the train.[1] Nevertheless, upon seeing the men near the tracks, Malone radioed Train 409 to advise that two men were walking to the north of Track 1, just ahead of Train 409's position.

Upon receiving that communication, Train 409's crew illuminated Train 409's bright headlight and applied its horn to warn of the train's presence. In addition, Train 409's ditch lights were on, its locomotive bell was ringing, and its crew maintained a lookout ahead.

On appeal, the Estate asserts that summary judgment was improper because a question of material fact exists as to the amount of time that passed between Train 409's knowledge of Shaffer and Ankney's presence in the area and the time of impact. The Estate asserts that the district court's decision is based on the mistaken belief that Train 409 had only five seconds to which to respond to their presence on the tracks. Directing the Panel to the DVRs of Trains 109 and 409, the Estate asserts that 39 seconds elapsed from the time that Malone radioed Train 409 and the time of impact. The Estate asserts that, in order to meet the applicable duty of care, Train 409 should have stopped upon hearing that Shaffer and Ankney were present in the area to the north of Track 1.

---

[1]There is no evidence to indicate that either Shaffer or Ankney appeared to be intoxicated when Malone saw them.

7

The Estate's argument fails for two reasons. First, the DVRs referenced by the parties were never submitted to, or considered by, the district court. The DVRs are not in the record and we are therefore unable to view them.

Second, summary judgment would still be warranted even if the DVRs were in the record and established that 39 seconds elapsed between the time that Malone radioed Train 409 and the time of impact. Contrary to the Estate's argument, the crew of Train 409 was not required to either slow or stop the train upon receiving Malone's radio call advising that two men had been seen walking to the north of Track 1. Indeed, the Estate acknowledges here, as it did in the district court, the general rule that railroad employees in charge of trains, having given all the usual and proper signals to warn persons of their approach, are not required to slacken the speed or stop the train absent circumstances indicating that such persons will not or cannot get out of danger. *Higgins v. Baltimore & Ohio Rail. Co.*, 147 N.E.2d 714 (Ill. App. Ct. 1958); 75 C.J.S. *Railroads,* § 1181 (2011). Where, as here, a trespasser is an adult who appears to be in possession of his faculties, "the engineer is entitled to expect the person to hear the warning signals and remove himself from danger." *Maxwell v. Illinois Cent. Gulf R.R.*, 513 So.2d 901, 905 (Miss. 1987); *see also Petre v. Norfolk S. Corp*., 260 F.App'x 756, 762 (6th Cir. 2007) (Under Ohio law, a train crew is not negligent for presuming that those approaching a train will stop short of the tracks and yield to an oncoming train). Thus, Train 409's crew was entitled to expect that Shaffer and Ankney would move away from the tracks upon hearing the loud, blaring warning signals of an oncoming train.

The evidence also establishes that CSX satisfied it due care obligations once Train 409's crew saw Shaffer and Ankney on the tracks. The Estate acknowledges here, as it did in the district court, that it is the duty of the train's engineer to keep a lookout on the track ahead of the train and, "if, while doing so, his eye takes in a person approaching the track, he may assume that such person will keep away from the track until the train passes," but *"when it becomes evident that such person will not keep off the track* it becomes the duty of such engineer to use ordinary care to prevent injury to such person." *Nye,* 437 F.3d at 567 (quoting *Cates v. Consolidated Rail Corp.*, 100 Ohio App.3d 288 (1995)) (emphasis added). Here, it did not become evident that Shaffer or Ankney would not keep off the track despite the warnings until Train 409's crew saw them.

Citing *Maxwell, supra*, the Estate acknowledges the general rule that a train's "engineer must stop the train, *if possible*, by the use of all reasonable efforts within their power *if the trespasser's peril is appreciated in time to stop*." (Estate's Appellate Brief at 14) (emphasis added). The district court appropriately recognized that the crew of Train 409 would have had an obligation to attempt a stop upon seeing Shaffer and Ankney on the tracks, *if such a stop was feasible.* Yet we agree with the district court that there is no evidence[2] in the record to establish that Train 409 could have safely

---

[2]In its Reply Brief, the Estate asserts that the district court erred in declining to consider the unsworn expert report submitted by the Estate, wherein the Estate's expert opined, among other things, that Train 409 could have stopped in 39 seconds. Unsworn expert reports are hearsay and may not be considered on summary judgment. Fed. R. Civ. P. 56; *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 480-81 & 488 (6th Cir. 2008) (Expert's report was unsworn letter and the district court erred in considering it in deciding summary judgment motion); *Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006) ("[T]he Bukowski [expert] Report is unsworn and thus is hearsay, which may not be considered on a motion for summary judgment."). Accordingly, the district court properly declined to consider the Estate's unsworn expert report. But even if we could consider that report,

and efficaciously made an emergency stop within the five second interval between the crew's spotting of the two men and the moment of impact. *See Petre v. Norfolk S. Ry. Co.*, 458 F.Supp.2d 518, 527-28, 538-39 (N.D. Ohio 2006) (recognizing that the "immutable laws of physics prove the inability to stop a train in a short distance" and granting summary judgment because there was no evidence to support an inference that the engineer, in the exercise of ordinary care, could have stopped or slowed the train sufficiently to avoid the collision where the train's crew first saw the decedent four seconds before impact), *aff'd*, 260 F.App'x 756 (6th Cir. 2007); *Brinks v. Chesapeake & Ohio Ry. Co.*, 398 F.2d 889, 891-92 (6th Cir. 1968) (affirming judgment in favor of railroad where there was no evidence that the railroad could have realized the decedent's peril in sufficient time to avoid the accident by applying the emergency brake); *Byrne v. CSX Transp.*, 2011 WL 1584324 at *5 (N.D. Ohio Apr. 26, 2011) (granting summary judgment on negligence claim where the evidence indicated that the train crew did not have sufficient time to take effective emergency procedures after realizing the plaintiff was in peril). To the contrary, the record evidence is susceptible of no reasonable interpretation other than that Train 409's crew could not have perceived Shaffer's peril in time to avoid the accident by applying the emergency brake.[3]

---

the Estate's expert opined that the train could stop in 39 seconds – not five seconds.

[3]Indeed, the Estate does not appear to dispute that Train 409 could not have stopped in a mere five seconds. (*See* Appellant's Br. at 10).

10

## VI.

We therefore **AFFIRM** the judgment of the district court.